MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
JEAN BARNIER, State Bar No. 231683
645 First St. West
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ) | |
| ) | Case No. 10-10088 |
| INDUSTRY WEST COMMERCE ) | |
| CENTER, LLC ) | |
| a California limited liability company ) | |
| ) | |
| Debtor. ) | **DISCLOSURE STATEMENT** |
| ) | **FOR DEBTOR'S** |
| | **PLAN OF REORGANIZATION** |

**THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AS CONTAINING ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE FOR SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION DATED FEBRUARY 18, 2010, AND FILED BY THE DEBTOR IN THIS PROCEEDING. HOWEVER, CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT. THE COURT HAS MADE NO INDEPENDENT INVESTIGATION OR DETERMINATION OF ANY FACTUAL STATEMENTS OR DOLLAR VALUES SET FORTH IN THE PLAN OR THE DISCLOSURE STATEMENT.**

I. INTRODUCTION

This Disclosure Statement has been prepared by Industry West Commerce Center, LLC the Debtor and Debtor-in-possession in the above-entitled Chapter 11 case, and is being

disseminated to all creditors for the purpose of soliciting acceptances of the Plan, a copy of which accompanies this Disclosure Statement. This Disclosure Statement is being provided to creditors to provide adequate information of a kind, and in sufficient detail, to enable creditors to make informed judgments about the Plan before exercising its rights to vote for acceptance or rejection of the Plan. Capitalized terms in this Disclosure Statement are defined in the Plan.

An acceptance or rejection of the Plan may be voted by completing the ballot which accompanies the Plan and mailing, faxing, or emailing it to MacConaghy & Barnier, PLC, attorneys for the Debtor, 645 First Street West, Sonoma, California 95476, (707) 935-7501, macclaw@macbarlaw.com.

## II. BACKGROUND OF THE DEBTOR

This is a "single asset real estate" case as defined by Bankruptcy Code Section 101(51B). The Debtor is a California limited liability company, which developed, owns, and manages an industrial/warehouse development totaling 193,264 +/- square feet in three buildings located at 237 Todd Road/256 & 258 Sutton Place, Santa Rosa, CA. A marketing brochure prepared for leasing purposes of the Debtor's property and which accurate describes it is attached to this Disclosure Statement and labeled Exhibit 1.

The majority of the construction costs for the three buildings were financed by a $17,000,000 construction loan agreement from Central Pacific Bank. This loan was originally due in full on July 11, 2008, and later extended to July 11, 2009. As is industry-standard practice in construction lending, the parties anticipated at the inception of the loan that the Debtor would obtain long-term "take out" financing once the project was completed and prior to the maturity date on the loan. The loan agreement also provided for the alternative that it could be converted to a 5-year "mini-perm" loan.

The project was completed and was approximately 72% leased out to credit tenants. It generated sufficient net operating income to make regularly scheduled debt payments to Central Pacific Bank and the subordinated junior secured creditors. However, due to the dramatic

constriction of credit markets starting in mid-2008 and continuing to the present time, the Debtor was unable to obtain long term "take-out" financing. Central Pacific Bank refused to permit the Debtor to exercise the "mini-perm" loan option, claiming that the Debtor did not meet the criteria for doing so. The Debtor disputes this contention. Additionally, the Debtor contends that Central Pacific Bank breached the applicable construction loan agreement by failing to fund required tenant improvements, thus damaging the overall capitalization of the project. Litigation ensued. On September 30, 2009, Central Pacific Bank filed an action for judicial foreclosure and related relief against the Debtor, its guarantors, and its junior lienholders in the Sonoma County Superior Court. The Debtor cross-complained for breach of the construction loan agreement. While the action was pending, Central Pacific Bank sought to seize control of the project through the appointment of a receiver.

In response, on January 10, 2010, the Debtor filed this Chapter 11 Case.

The assets and liabilities of the Chapter 11 estate are discussed in detail in Article IV below.

Following the filing of the Chapter 11 Cases, the Debtor filed all required Schedules, Statements of Affairs, and other initial papers. The Debtor was authorized by the Court to use the "cash collateral" or rental income from the project to pay ongoing operating expenses pending promulgation of this Plan. The Debtor was authorized to retain the law firm of MacConaghy & Barnier, PLC as its counsel in the proceedings. Prior to the Chapter 11 filing, MacConaghy & Barnier, PLC was paid a $50,000 retainer on account of services to be rendered in these cases.

No official committee of unsecured creditors was appointed in the case.

### III. SUMMARY OF THE PLAN

The Debtor' Plan seeks to restructure its respective debts in three different ways. First, the secured debt in favor of the first, second, and third mortgage holders will be reamortized into

new notes in the same priority secured by the existing deeds of trust, bearing interest at, respectively, (1) the variable rate specified in the first note; (2) 5.5% per annum as to the second note, and (3) 5% per annum as to the third note. Interest only will be payable monthly and the entire balance of these notes will be due in full in seven years. Second, unsecured creditors will be paid in full with interest at the federal judgment interest rate (.42% per annum) in four quarterly installments commencing one year from the Effective Date of the Plan through a cash flow from the Debtor's property. Third, any delinquent real property taxes will be cured, with statutory interest, through a five-year payment plan of semi-annual installments, starting April 10, 2010. Payments on these obligations will be funded through the rental income from the Debtor's real property.

If the Debtor fails to meet these requirements, the secured lenders will be permitted to foreclose and/or the Case may be converted to Chapter 7 liquidation proceedings on the motion of a party in interest.

The treatment of claims and interests described below applies only to Allowed Claims. Determination of the amounts due to creditors will be after reconciliation of the amounts claimed by the Creditor in question with the Debtor' business records. In the event of a dispute, the Debtor will file objections to the allowance of the claim.

The treatment of each particular type of Creditor is described below.

### A. UNCLASSIFIED CLAIMS

Section 1123(a)(1) of the Bankruptcy Code provides that certain claims, including claims for post-petition administrative expenses (including professional fees) and certain claims by governmental units for taxes, are not classified under the Plan. Entities holding unclassified claims are not entitled to vote on the Plan.

Any unpaid professional fees incurred up through Confirmation will be paid if and when allowed by the Court pursuant to Bankruptcy Code Section 330. The amount of unpaid professional fees depends in large part on whether there are contested confirmation proceedings.

Debtor' counsel estimates that the amount of these additional fees may range from zero to $25,000.   All other post-petition administrative expenses, including quarterly fees due or to become due to the United States Trustee will be paid as of the Effective Date of the Plan. The Debtor estimate that, other than professional fees, unpaid administrative expenses will be less than $5,000.

All tax claims entitled to priority under Bankruptcy Code Section 507(a)(8) will receive deferred cash payments over a period not to exceed five (5) years after the Petition Date, as provided by Bankruptcy Code Section 1129(a)(9)(C).  Tax claims will bear interest at the rate specified in Section 6621 of the Internal Revenue Code.  Unclassified Tax Claims do not include local real estate taxes, which are separately classified as Classes 4, as described below, due to the secured status of those Claims.  The Debtor does not believe that it owes any unclassified Tax Claims, but has made a provision for the payment of such claims if an Allowable proof of claim is timely filed by a taxing authority.

### B. CLASSIFIED CLAIMS AND INTERESTS

The Plan divides claims and interests into 10 classes.  A description of each class and the its treatment under the Plan follows.

Class 1:        Secured Claim of Central Pacific Bank

Central Pacific Bank, holds a Secured Claim in the approximate amount of $16,000,000 (the precise amount is subject to dispute) collateralized by a first deed of trust on the Debtor's real property. The Plan provides that to the extent that Central Pacific Bank has an Allowed Secured Claim, it will be given a new promissory note secured by its existing lien. The principal amount of this Modified Note will be all unpaid principal, interest, attorneys fees, and collection costs due under the existing obligation. The Modified Note will bear interest at same variable rate as specified in the pre-petition Promissory Note, payable in monthly installments of interest only, but due in full in seven years. This Class is impaired and entitled to vote on the Plan.

Class 2: Secured Claim of Todd JBRE, LLC

Todd JBRE, LLC, as assignee of Clifford James Brown, Jr. Trustee, individually and as collateral agent for a number of co-mortgagees, holds a Secured Claim in the approximate amount of $800,000 collateralized by a second deed of trust on the Debtor's real property. The Plan provides that to the extent that this Claimant has an Allowed Secured Claim, they will be given a new promissory note secured by their existing lien. The principal amount of this Modified Note will be all unpaid principal, interest, attorneys fees, and collection costs due under the existing obligation. The Modified Note will bear interest at 5.5% per annum, payable in monthly installments of interest only, but due in full in seven years. This Class is impaired and entitled to vote on the Plan.

Class 3: Secured Claim of Mark and Irma McClure

Mark and Irma Clure, Trustees, holds a Secured Claim in the approximate amount of $2,000,000 collateralized by a third deed deed of trust on the Debtor's real property. [The McClures are also 20% LLC Members of the Debtor and thus meet the statutory definition of "insider".] The Plan provides that to the extent that the McClures have an Allowed Secured Claim, they will be given a new promissory note secured by their existing lien. The principal amount of this Modified Note will be all unpaid principal, interest, attorneys fees, and collection costs due under the existing obligation. The Modified Note will bear interest at 5% per annum, payable in monthly installments of interest only, but due in full in seven years. This Class is impaired and entitled to vote on the Plan.

Class 4: Secured Claim of The County of Sonoma

The County of Sonoma may hold a Secured Claim for back, unpaid real estate taxes secured by the Debtor's real property. The Plan provides that any such defaulted real property taxes will be repaid with interest as required by Bankruptcy Code Section 511 in semi-annual installments paid over five years, commencing on April 10, 2010. The Debtor does not believe that it owes any back, unpaid secured real property taxes, but has made a provision for the

payment of such claims if an Allowable proof of claim is timely filed by the County of Sonoma. This Class is impaired and entitled to vote on the Plan.

Class 5: <u>Priority Claims for Wages and Employee Benefits</u>.

Bankruptcy Code Section 507(a)(4) provides that unsecured claims for wages, salaries or commissions, including vacation, severance and sick leave pay earned within 180 days before the date of the filing of the Petition, in an amount not to exceed $10,950 for each individual, are entitled to priority. Bankruptcy Code Section 507(a)(5) provides a priority for unpaid contributions to employee benefit plans arising from services rendered within 180 days before the date of the filing of the Petition,, also with certain monetary limitations thereon. The Debtor does not believe that it owes any priority wage and benefit claims, but has made a provision for the payment of such claims if an Allowable proof of claim is timely filed by a priority wage or employee benefit claimant. This class is unimpaired and not entitled to vote on the Plan.

Class 6: <u>Priority Consumer Deposit Claims</u>.

Bankruptcy Code Section 507(a)(7) provides that unsecured claims for consumer deposits owed by a debtor, in an amount not to exceed $2,425, for each individual, are entitled to priority. The Debtor does not believe that it owes any priority consumer deposit claims, but has made a provision for the payment of such claims if an Allowable proof of claim is timely filed by a priority wage or employee benefit claimant. This class is unimpaired and not entitled to vote on the Plan.

Class 7: <u>Claims of General Unsecured Creditors</u>.

General Unsecured Creditors will be paid 100% of their Allowed Claims with interest at the Legal Rate. These claims will be paid in four quarterly installments commencing one year from the Effective Date. The Debtor estimate that there are approximately $93,000 in Class 7 Claims. This Class is impaired and entitled to vote on the Plan.

Class 8: <u>The Holders of LLC Membership Units in the Debtor</u>

The holders of limited liability company membership interests in the Debtor shall retain

their interests. No dividend, distribution, or other payment or transfer shall be made to the Class 8 interests on account of its LLC membership units until all classified and unclassified creditors are paid in full. Class 8 is unimpaired and not entitled to vote on the Plan.

### C. OTHER PROVISIONS OF THE PLAN

The Plan contains a number of other provisions concerning its implementation. The following is a summary. Consult the Plan itself for details.

#### 1. Executory Contracts

The Debtor believes that those leases on its property in which it is a lessor are "executory contracts", as the term is defined by Bankruptcy Code Section 365, and the Plan provides that these executory contracts are to be assumed. The Plan further provides that any other executory contracts may be assumed or rejected up through the time of Confirmation. If there is a rejected executory contract is timely rejected by the Debtor, the holder of the contract right may have a "Rejection Claim" as defined in the Plan and subject to the deadlines and treatment specified therein.

#### 2. Post Confirmation Management

Following Confirmation, the Debtor intends to maintain its current management Rizzo & Associates, LLC, a single member LLC owned and controlled by Vincent Rizzo. Rizzo & Associates, LLC will also act as the Disbursing Agent under the Plan.

#### 3. Post-Confirmation Compensation and Reimbursement of Professionals.

All professionals employed by the Reorganized Debtor or the Disbursing Agent (if a third party Disbursing Agent is appointed), including the Debtor' Professionals, shall be entitled to payment of its post-Confirmation Date fees and reimbursement of expenses on a monthly basis, based on the service of a detailed statement of the requested fees and expenses on the Notice Parties as discussed more fully in the Plan. Pre-confirmation compensation remains subject to the noticed motion requirements of Bankruptcy Code Section 330.

4. Distributions and Claims.

Subject to the deadlines in the Plan, distributions will be made to Creditors when its Claims are Allowed Claims, as defined in the Plan. Proofs of Claim, when required, had to be filed with the Bankruptcy Court no later than the applicable Claims Bar Date (which for most prepetition Claims is May 16, 2010) or the applicable Governmental Unit Claims Bar Date for prepetiton tax and similar Claims (July 15, 2010). However, Bankruptcy Rule 3001(b) provides that it is not necessary for a Creditor to file a proof of Claim if its Claim has been listed on the Debtor Schedules filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Rule 1007(a)(3) of the Bankruptcy Rules, and is not listed as disputed, contingent, unliquidated or unknown as to amount. Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim may not be filed or amended unless the amendment is solely to decrease the amount or priority. Distributions to Creditors under the Plan will be made to the Persons shown on the Debtor' or the Bankruptcy Court's records on the Effective Date.

**Any party who acquires a claim against the Reorganized Debtor after the Effective Date must arrange with the holder on that date to receive distributions to which the transferee may be entitled. Neither the Reorganized Debtor nor the Disbursing Agent will be required to track changes in ownership of claims after the Effective Date.**

Objections to any Claim may be filed by any party in interest and shall be filed no later than the Claims Objection Date, which is defined in the Plan as 90 days after the Effective Date.

5. Reservation of Litigation Rights

Under the Plan the Debtor are reserving all of its litigation rights and defenses against all Creditors, including without limitation (1) any claims and causes of action against Central Pacific Bank (2) the right to object to any Claim, even if the Creditor in question votes to accept the Plan. The failure of this Disclosure Statement to disclose or discuss any particular potential

Claim objection, cause of action or claim for relief held by the Debtor or the Bankruptcy Estate is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim objection, cause of action or claim for relief.

6. <u>Retention of Jurisdiction</u>.

Article XI of the Plan provides that the Bankruptcy Court shall retain broad jurisdiction under the Bankruptcy Code to adjudicate any disputes arising out of the Plan, the administration of the Cases, and claims for relief held by the Debtor or Reorganized Debtor.

7. <u>Persons Bound/Discharge of Debts</u>.

Confirmation of the Plan binds the Debtor, the Reorganized Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Equity Security Holder, whether or not such Creditor or Equity Security Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Equity Security Holder is impaired under the Plan, and whether or not such Creditor or Equity Security Holder has accepted or rejected the Plan. The Confirmation Order shall further discharge the Debtor from all Claims which arose prior to the date of Confirmation, as is more particularly described in Section 1141(d)(1) of the Bankruptcy Code.

## IV. STATEMENT OF ASSETS AND LIABILITIES AND FEASIBILITY OF THE PLAN

A. <u>In General</u>

This section will describe the assets and liabilities of the Debtor and discuss the feasibility of the Plan.

B. <u>Assets</u>

The assets of the Debtor are its real property described above and certain cash reserves. The Debtor has commissioned an MAI appraisal of its real property. As of August of 2009, the appraised value of the property was $23,670,000, if sold as three separate buildings, and

9530.DISCAMENDED2                                                                                                                    PAGE 10
Case 10-10088    Doc# 39    Filed: 03/19/10    Entered: 03/19/10 15:29:19    Page 10 of 18

$21,350,000 if sold in bulk. The Debtor's senior secured lender, Central Pacific Bank, commissioned its own appraisal. That appraisal valued the property "as is" as of May 19, 2009 in the amount of $18,320,000, and "prospective bulk stabilized value" as of May 19, 2010 in the amount of $19,660,000, and a "prospective stabilized value" for the three buildings as individual units totaling $20,690,000. The Debtor is also holding cash reserves of approximately $625,000. This amount is significantly in excess of the total amount of unsecured claims against the Debtor. However, the Debtor's management believes that it is necessary to hold these funds in reserve, rather than pay unsecured creditors in full immediately, so that the Debtor will have sufficient reserves to pay leasing commissions and tenant improvement allowances to lease the remaining vacancies in the project so as to maximize its value

      C.      <u>Liabilities</u>

The Debtor's best estimate of the amount of asserted claims against its Chapter 11 Estate, is as follows:

| | |
|---|---:|
| Secured Debt | |
|     County of Sonoma | 0.00 |
|     Central Pacific Bank | 16,000,000.00 |
|     Todd JBRE, LLC | 800,000.00 |
|     Mark & Irma McClure | 2,000,000.00 |
| **Subtotal Secured Debt** | **18,800,000.00** |
| Unsecured Debt | |
|     Administrative expenses | 0.00 |
|     Priority claims (non-tax) | 0.00 |
|     Priority unsecured taxes | 0.00 |
|     General unsecured claims | 93,339.75 |

| | | |
|---|---|---|
| **Subtotal Unsecured Debt** | | 93,339.75 |
| **TOTAL DEBT** | | 18,893,339.75 |

D.   Feasibility of the Plan

Successful consummation of the Plan has two components. First, there is the Debtor's obligation to make periodic debt service payments to its secured creditors. Second, there is the Debtor's obligation to fully pay its unsecured creditors.

The Debtor estimates that the monthly debt service accruing and/or due to its secured creditors under the Plan will be no greater than $55,333.33 per month, consisting of (1) $43,333.33 per month due Central Pacific Bank under the "Prime Rate Option" in its note (that amount may be less under the LIBOR Rate Option"), (2) $3,666.67 due Todd JBRE, LLC and (3) $8,333.33 due Mark and Irma McClure.

The Debtor's ability to make these debt service payments is contingent upon maintaining the current gross monthly rent (including reimbursed CAM charges) of $111,623 without significant further vacancies, and maintaining operating expenses, insurance, taxes, and reserves for new tenant improvements, leasing commissions for vacant space below the balance. Based on historical performance, the Debtor believes that this is feasible. The Debtor's 18 month pro-forma budget is attached as Exhibit 2. Although the Plan provides for seven year term, the Debtor believes that it is not prudent to make itemized projections beyond 18 months. However, the existing leases extend through the full life of the Plan and the Debtor believes that these financials may well improve as the remaining vacancies in the project are filled. The Debtor further believes that the real estate and capital markets will sufficiently recover by the end of the seven year term of the restructuring period to allow for a sale or refinancing so that the principal amount of the Allowed Secured Claims can be satisfied by that time. The Debtor selected the seven year term for the Plan based on advice of counsel, and not any objective commercial standards for work-out transactions.

9530.DISCAMENDED2                                                                                                                                               PAGE 12
Case 10-10088    Doc# 39    Filed: 03/19/10    Entered: 03/19/10 15:29:19    Page 12 of 18

Aside from financial matters, the Debtor believes that it can comply with all technical requirements of the Bankruptcy Code necessary to confirm and substantially consummate the Plan.

## V. ALTERNATIVES TO THE PLAN

### A. Chapter 7 Liquidation

In a Chapter 7 liquidation proceeding, the Debtor's interest in any assets of the Estate would vest in a Chapter 7 trustee, who would either release them to the respective secured creditors or attempt to sell those assets to third parties and distribute any proceeds pro rata to all creditors of the estate under the priorities established by Bankruptcy Code Section 507. A Chapter 7 Trustee also has the statutory power to assert "avoidance claims" and other litigation claims held by the Estate against third parties pursuant to Bankruptcy Code Sections 510, 541, 544, 545, 547, 548, and 549, which can generate funds to pay unsecured creditors.

The Debtor believe that the Plan is significantly more beneficial to creditors than Chapter 7 for a number of reasons.

First, the Debtor are utilizing its powers under Bankruptcy Code Section 1123(a)(5) to modify and extend its secured debt to carry the properties through the current economic downturn. A Chapter 7 Trustee lacks these powers.

Second, the Debtor believe that its management can return a full dividend to unsecured creditors more quickly and efficiently than a Chapter 7 Trustee. Under the Plan, unsecured creditors will be paid in full within two years. The average "asset" Chapter 7 case takes 3 years to generate a dividend.

Third, with the cooperation of the Debtor, the Debtor' counsel has thoroughly investigated potential avoidance and other litigation claims. Counsel has determined that no such claims likely exist.

### B. No Other Plans

The Bankruptcy Code permits parties in interest other than the Debtor to propose a plan

of reorganization under certain circumstances.  The Plan submitted by the Debtor is the only plan of reorganization that has been proposed at this time.

## VI. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A. In General

The following is a summary of certain United States federal income tax consequences of the Plan that may be material to Creditors and holders of Equity Securities (each a "Holder"). This discussion is included for general information purposes only and is not intended to be, and is not, legal or tax advice to any particular Holder.  This summary is based on the current provisions of the Internal Revenue Code of 1986, as amended (the "Code"), the Income Tax Regulations (the "Regulations") and other legal authorities, all of which are subject to change, possibly with retroactive effect.  No rulings from the Internal Revenue Service (the "IRS") or opinions of counsel have been or will be requested concerning the matters discussed below.  The tax consequences set forth in the following discussion are not binding on the IRS or the courts, and no assurance can be given that contrary positions will not be successfully asserted by the IRS or adopted by a court.

This summary does not address the taxation of the Debtor or the Holders under state, local law or foreign law.

**TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, HOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY HOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY DEBTOR IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**EACH HOLDER SHOULD CONSULT THE HOLDER'S OWN TAX ADVISOR TO DETERMINE THE HOLDER'S PARTICULAR U.S. FEDERAL INCOME**

**TAX CONSEQUENCES AND OTHER TAX CONSEQUENCES TO THE HOLDER OF THE PLAN, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX LAWS AND THE EFFECT OF ANY CHANGES IN SUCH LAWS.**

B. <u>Consequences to Debtor</u>.

As limited liability companies which have not elected to be taxed as a corporations, the Debtor are each disregarded as an entity separate from its owners for U.S. federal income tax purposes. Accordingly, any income, gain or loss realized by the Debtor will be considered, for U.S. federal income tax purposes to be realized by the Holder of the membership units in the Debtor.

C. <u>Consequences to Creditors</u>.

Creditors should consult its own tax advisors concerning any income tax consequences of its respective treatment under the Plan.

D. <u>Consequences to Unit Holder</u>.

A Holder of the units of a limited liability company that has not filed an election to be taxed as a corporation for federal income tax purposes is considered to realize the income, gain or loss realized by the limited liability company in accordance with the Holder's method of accounting for federal income tax purposes.

Such income, gain or loss may be realized and reportable by the Holder regardless of whether any distribution is received by the Holder. Thus, the Holder (or its owners) may be required to recognize income for U.S. federal income tax purposes as a result of a sale of assets of the Debtor even if no cash or other property is distributed by the Debtor to the Unit Holder. The income, gain or loss may be taxable to the Holder.

However, the Debtor do not believe that the Confirmation of the Plan will result in a taxable event to the holder(s) of its respective LLC interests.

E. <u>Wage Withholding</u>.

If any Allowed Claim under the Plan constitutes "wages" for U.S. federal income tax purposes, the U.S. federal income tax rules applicable to wage withholding will apply to the

payment of the Allowed Claim.

F. <u>Backup Withholding</u>.

U.S. federal income tax laws require that, to avoid backup withholding with respect to "reportable payments" (in an amount equal to 28%), Creditor or Holder must (a) provide Debtor with its correct taxpayer identification number ("<u>TIN</u>") on IRS Form W-9 and certify as to its eligibility for exemption from backup withholding, or (b) establish a basis for exemption from backup withholding on an appropriate IRS Form W-8 (including a Form W-8BEN, W-8ECI, W-8EXP and W-8IMY) or IRS Form W-9, as applicable. Exempt Creditors and Holders (including, among others, all corporations and certain foreign individuals) are not subject to backup withholding and reporting requirements. If withholding is made and results in an overpayment of taxes, a refund may be obtained.

## VII. VOTING, ACCEPTANCE AND CONFIRMATION

A. <u>In General</u>.

The Hon. Alan Jaroslovsky, Judge, United States Bankruptcy Court, has set a date for the hearing on the Confirmation of the Plan. The hearing is to held at the United States Bankruptcy Court, 99 South E Street, Santa Rosa, CA 95404. The Plan can be implemented only if accepted by the requisite percentage of creditors and confirmed by the Bankruptcy Judge. Creditors entitled to vote should vote on the Plan by filling out and mailing the accompanying ballot to counsel. There is no assurance that, if accepted, the Plan will be confirmed by the Bankruptcy Judge.

B. <u>Voting</u>.

Only impaired classes under the Plan will be entitled to vote on the Plan. The definition of an "impaired" class of Creditors is set forth in Section 1124 of the Bankruptcy Code. Classes 1, 2,3,4, and 7 are impaired by the Plan and entitled to vote. No other Classes are impaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, a class that is not impaired

9530.DISCAMENDED2
PAGE 16
Case: 10-10088    Doc# 39    Filed: 03/19/10    Entered: 03/19/10 15:29:19    Page 16 of 18

under the Plan, and each holder of a Claim or Interest of such class, are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such class from the holders of Claims or Interests of such class is not required. The Bankruptcy Code defines "acceptance" of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan.

In addition to the requirement that a Creditor be in an "impaired class", in order for a creditor's vote to be counted, either for or against the Plan, the creditor must have either (1) filed a proof of claim on or before the "Claims Bar Date", which was previously set by the Court at May 16, 2010, or (2) have been listed by the Debtor in the Schedule of Liabilities as having a claim which was noncontingent and undisputed.

**IF YOU HAVE ALREADY FILED A CLAIM YOU NEED NOT REFILE FOR THE PURPOSE OF VOTING ON THE PLAN.**

If a Creditor wishes to vote for or against the Plan, the Creditor should complete an acceptance or rejection of the Plan on the form ballot enclosed herewith which must be returned pursuant to the instructions set forth thereon.

    C.  <u>Confirmation</u>

If no impaired Creditor classes accept the Plan, it cannot be confirmed. If at least one impaired class of Creditors accepts the Plan, the Court will hold a Confirmation Hearing. At the Confirmation hearing, the Bankruptcy Judge has the duty to determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code. The principal requirements of Section 1129 include the following: (1) that the proponents of the Plan have complied with the applicable provisions of the Bankruptcy Code on all matters connected with the case; (2) that the Plan has been proposed in good faith, and not by any means forbidden by law; (3) that the requisite amount of creditors have accepted the Plan or that the creditors are receiving an amount not less than they would receive if liquidation under Chapter 7 took place; (4) that at least one

class of Creditors has accepted the Plan; and (5) that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor; and (6) that the Debtor and the Plan in all other respects comply with applicable law.  Only if such determinations are made will the Judge confirm the Plan.

In addition, if there are impaired Creditor classes which have rejected the Plan, the Bankruptcy Judge may order Confirmation over its rejection, but only if the Judge first determines that the rights of non-consenting classes of creditors are protected under Bankruptcy Code Section 1129(b) and other applicable law.

### D. Modification of the Plan.

The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Debtor or Reorganized Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

## V. CONCLUSION

The Debtor believes that its Plan of Reorganization realistically affords to Creditors its best opportunity for receiving a prompt, meaningful dividend.  The Debtor respectfully requests that Creditors vote to accept the Plan.

Dated: March 18, 2010                MacCONAGHY & BARNIER, PLC

   /s/ John H. MacConaghy
By John H. MacConaghy
Attorneys for Debtor

Dated: March 18, 2010                INDUSTRY WEST COMMERCE CENTER, LLC

   /s/ Vincent Rizzo
By Vincent Rizzo
Its Responsible Person

9530.DISCAMENDED2
PAGE 18
Case: 10-10088   Doc# 39   Filed: 03/19/10   Entered: 03/19/10 15:29:19   Page 18 of 18