UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

INDUSTRY WEST COMMERCE CENTER, LLC,

No. 10-10088

Debtor(s).
_____/

Memorandum on Confirmation of Amended Plan
_____

Chapter 11 debtor Industry West Commerce Center, LLC, owns an industrial warehouse facility in Santa Rosa, California. The facility is worth about $20 million. It is encumbered by a first deed of trust held by Central Pacific Bank ("Bank") securing a debt of about $16.5 million and a second deed of trust held by Todd JBRE, LLC ("Todd"), securing a debt of about $900,000.00. There are about $100,000.00 in unsecured claims. The unsecured creditors have accepted the plan. The two secured creditors originally reject it. After the court denied confirmation, the debtor modified it and Todd accepted the modification and now supports confirmation. Only the objection of the Bank remains.

The issue before the court at confirmation is whether the plan is fair and equitable as to the Bank. If it is, the plan can be confirmed over its objection by virtue of § 1129(b)(1) of the Bankruptcy Code.

The plan calls for the Bank to retain its lien and to receive a new note providing for monthly payments of interest at the rate of 4.45%. The entire balance of principal and interest would be due in

1

seven years.

The Bank concedes that while equity is thin, there is enough value in its collateral to pay all creditors in full. It argues that this is a better result, despite the fact that all creditors except it have accepted the plan. The court is not persuaded by the Bank's argument. Pursuant to § 1123(a)(5)(D) and § 1123(b)(4) of the Code, sale of estate property is merely one of numerous ways to reorganize. When a secured creditor dissents, the only issue is whether or not the plan is fair and equitable to it, not whether the other creditors should have opted for a different mode of reorganization. Moreover, a plan which avoids a sale is generally in the best interests of the economy as a whole, as it results in one less property available for sale, thereby assisting in maintaining overall property values.

The seven-year term is reasonable, as it is long enough to weather the current economic storm without being unduly long. Fair and equitable treatment depends on the interest rate to be paid to the Bank.

The Bank points out correctly that there are two significant risks associated with its treatment under the amended plan. First, some of the leases from which the debtor earns the revenue need to make the payments will expire during the seven year term, and the debtor may not be able to replace them. Second, there is a risk of an overall crisis in the commercial real estate market in the next few years which could result in a meltdown similar to that which has occurred in the residential real estate market. The court agrees that these are real risks.

Under current conditions, there is no efficient market rate of interest to be applied as the "cram-down" interest. Under such circumstances, the generally accepted approach for a court to take is to start with the current prime rate and enhance it for risk factors while considering the contract rate as some sort of vague admission by the secured creditor. *In re American Homepatient, Inc.* 420 F.3d 559, 567-68 (6th Cir.2005), *cert denied*, 127 S.Ct.55 (2006).

The current prime rate is 3.25%. The contract rate, under a complicated calculation, would be something less but for a shorter term. The primary risk factor, that the commercial real estate market might implode due to a lack of available money in the future, requires an adjustment up from prime but

2

Case: 10-10088   Doc# 86   Filed: 08/13/10   Entered: 08/16/10 10:59:12   Page 2 of 3

not to the extent argued by the Bank, as there remains the possibility that Congress would intervene to make funds available rather than allow the commercial real estate market to tank. The fact that the property is not fully leased and some of the leases will expire during the term of the plan is also a significant risk factor. On the other hand, the fact that there is at least $1 million in value of the property over and above the Bank's lien militates for a lower interest rate than the Bank seeks.

After reviewing the evidence on the issue, the court feels that 120 basis points should be added to prime to cover the risk of further economic downturn and 50 basis points should be added for risks associated with possible declining lease revenue. This leads the court to a determination that the plan would be fair and equitable to the Bank if its rate of interest were 4.95%. If the plan is amended to call for this rate, it will be confirmed. Counsel for the debtor shall submit an order confirming the plan if it is so amended.

Dated: August 13, 2010

Alan Jaroslovsky
U.S. Bankruptcy Judge

3