MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
645 First St. West
Sonoma, CA 95476
(707) 935-3205
(707) 935-7051 (Facsimile)
Email: macclaw@macbarlaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 10-10088 |
| INDUSTRY WEST COMMERCE CENTER, LLC, | Chapter 11 |
| A California limited liability company | **DEBTOR'S MODIFIED PLAN OF REORGANIZATION [AUGUST 16, 2010]** |
| Debtor. | |

## PRELIMINARY STATEMENT

Industry West Commerce Center, LLC (the "Debtor") proposes this plan of reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

This Plan sets forth the Debtor's proposal for the satisfaction of certain Allowed Claims against the Debtor, and the Distribution thereafter of all remaining assets to the Debtor's Equity Security Holders. The Debtor hereby request that the Bankruptcy Court confirm the Plan and do so, if applicable, in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

"Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means that date which is thirty (30) days following the date of the notice of the Confirmation Date.

"Allowed" or "Allowed Amount" means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim" means a Claim (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed

Case: 10-10088    Doc# 89    Filed: 08/17/10    Entered: 08/17/10 10:39:41    Page 2 of 24

within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied.

"Allowed Interest" means the Allowed Interest of an Equity Security Holder.

"Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

"Available Cash" means any and all cash and cash equivalents owned or held by the Reorganized Debtor available for payment of Claims and Interests after payment of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

"Avoidance Actions" means causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

"Bankruptcy Case(s)" or "Case(s)" means the bankruptcy case commenced by the Debtor filing with the Bankruptcy Court of its Voluntary Petitions under Chapter 11 of the Bankruptcy Code, Case No. 10-10088.

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division or such other court exercising jurisdiction over the Case.

"Bankruptcy Estate(s)" means the estate(s) created by the commencement of the Bankruptcy Case(s) and comprised of the property described in Section 541 of the Bankruptcy Code.

2

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, May 16, 2010, (b) with respect to claims held by governmental units, July 15, 2010, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Reorganized Debtor.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"Creditor" means any entity holding a Claim against the Debtor.

"Debtor" means the Debtor Industry West Commerce Center, LLC, a California limited liability company.

"Debtor's Professionals" means MacConaghy & Barnier, PLC, and/or their respective successors, if any; and such other professionals whose employment by the Debtor prior to Confirmation is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Reorganized Debtor to represent or assist them in fulfilling their duties and obligations as the Reorganized Debtor under the Plan, including such accountant(s) as the Reorganized Debtor may select to complete the Debtor's tax returns and other required filings

3

with governmental authorities having jurisdiction over the Reorganized Debtor and such legal professionals as might be appropriate to assist in administering the Plan, the Bankruptcy Cases and the Bankruptcy Estates.

"Disbursing Agent" means Rizzo & Associates, LLC, provided that the Debtor may request the Court to designate another Person to serve as Disbursing Agent.

"Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated, or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

"Distribution" means, as the context requires:  (a) the cash to be provided under the Plan to the holders of Allowed Claims and Allowed Interests; or (b) the payment, transfer, delivery or deposit of cash to Creditors and Equity Security Holders pursuant to the Plan.

"Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

"Effective Date" means the thirtieth (30th) day following the Confirmation Date so long as the Order of Confirmation is not subject to a stay.

"Equity Security Holder" means the holder of an Interest in the Debtor.

"Final Order" means an order entered on the docket by the Bankruptcy Court as to which no timely filed notice of appeal is pending within ten (10) days entry of such order; or, if such appeal is pending, for which no stay pending has been issued.

"Interest" means units or rights to units or any membership interest or other ownership interest held by any Person in the Debtor.

"Legal Rate" means forty two hundredths percent (.42%) per annum, the interest rate allowed on judgments entered in federal courts pursuant to 28 U.S.C. § 1961(a) which is the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the Petition Date.

"Local Rules" means the Local Rules of the United States Bankruptcy Court for the Northern District of California, as amended, as applicable to this Bankruptcy Case.

4

"Order of Confirmation" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Person" shall have the meaning ascribed to it in the Bankruptcy Code.

"Petition Date" means January 14, 2010, the dates on which the Debtor  filed its Voluntary Petition under Chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

"Plan" means this Debtor's PLAN OF REORGANIZATION, including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

"Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim or Interest, the proportion that such Allowed Claim or Allowed Interest bears to the aggregate of all outstanding Allowed Claims or Allowed Interest in the same Class.

"Rejection Claim" means an Allowed Unsecured Claim arising from the Debtor's rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"Rejection Claims Bar Date" means the earlier of (a) thirty (30) days following the date of the notice of the  Confirmation Date, or (b) thirty (30) days after the rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Reorganized Debtor" means the Debtor on and after the Effective Date.

"Retained Claims" means any Claim, or cause of action created by contract, tort, equity, or statute,  owned or held by the Debtor against any Person as of the Effective Date, including Avoidance Actions and those Retained Claims referred to in Article X.

"Schedules" means the Debtor' respective schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at anytime prior to

5

Distribution.

"Secured Claim" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any Allowed Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

A term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE II

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Interests in the Debtor are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class.

2.1 **Class 1 (Secured Claim of Central Pacific Bank.** Class 1 consists of the Allowed Claim of Central Pacific Bank, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property commonly known as 237 Todd Rd/256 & 258 Sutton Place, Santa Rosa, CA.

2.2 **Class 2 (Secured Claim of Todd JRBE, LLC).** Class 2 consists of the Allowed Claim of Todd JBRE, LLC as successor to Clinton James Brown, as Trustee for certain individuals and entities, or its assignee to the extent that such Claim constitutes an Allowed Secured Claim on certain real property commonly known as certain real property commonly known as 237 Todd Rd/256 & 258 Sutton Place, Santa Rosa, CA.

6

2.3 **Class 3 (Secured Claim of Mark and Irma McClure, Trustees).** Class 3 consists of the Allowed Claim of Mark and Irma McClure, as Trustees , or his assignee to the extent that such Claim constitutes an Allowed Secured Claim on certain real property commonly known as certain real property commonly known as 237 Todd Rd/256 & 258 Sutton Place, Santa Rosa, CA.

2.4 **Class 4 (Secured Claim of The County of Sonoma).** Class 4 consists of the Allowed Claim of The County of Sonoma, or its assignee, to the extent that such Claim constitutes an Allowed Secured Claim on certain real property commonly known as 237 Todd Rd/256 & 258 Sutton Place, Santa Rosa, CA.

2.5 **Class 5 (Priority Employee Wage and Benefit Claims) .** Class 5 consists of Priority Claims against the Debtor entitled to priority under Bankruptcy Code Sections 507(a)(4) and (a)(5).

2.6 **Class 6 (Priority Consumer Deposit Claims) .** Class 6 consists of Priority Claims against the Debtor entitled to priority under Bankruptcy Code Sections 507(a)(7).

2.7 **Class 7 ( General Unsecured Claims ).** Class 7 consists of all Allowed Unsecured Claims against the Debtor  not included or provided for in any other class, including all Rejection Claims and all unsecured Claims of vendors and trade creditors for goods delivered or services provided to the Debtor prior to the Petition Date, but excluding Administrative Claims, Priority Claims, and Tax Claims.

2.8 **Class 8 (LLC Interests in the Debtor).** Class 8 consists of all Allowed Interests in the Debtor.

### ARTICLE III

### CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

The following classes of Claims and Interests are not impaired under the Plan for the reasons hereinafter set forth:

3.1 **Class 5 (Section 507(a)(4) and (a)(5) Priority Claims).** Except to the extent that the holder of a particular Class 5 Claim has agreed to a different treatment of such Claim, each holder of

7

an Allowed Class 5 Claim shall be paid in cash from the Estate, in full upon the later of (a) the Effective Date, or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim.

       3.2    **Class 6 (Section 507(a)(7) Priority Claims).**  Except to the extent that the holder of a particular Class 7 Claim has agreed to a different treatment of such Claim, each holder of an Allowed Class 7 Claim shall be paid in cash from the respective Estate, in full upon the later of (a) the Effective Date, or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim.

       3.3    **Class 8 (LLC Interests in the Debtor).**  The Class 8 interests of the holders of membership interests in the Debtor shall remain unaltered by this Plan. No dividend or other payment or transfer shall be made to the Class 8 interests on account of their membership interests until all classified and unclassified unsecured creditors of the Debtor are paid in full

**ARTICLE IV**

**TREATMENT OF UNCLASSIFIED CLAIMS**

Unclassified Claims shall be treated as follows:

       4.1    **Allowed Administrative Claims.**  Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim, and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtor' business by a person other than an insider, within such time as payment is due pursuant to the terms giving rise to such Claim. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than by the Debtor' Professionals, must be filed on or before the Administrative Claims Bar Date or the holder of such Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim.

       4.2    **Tax Claims.**  The holders of Allowed Claims entitled to priority under 11 U.S.C. §

507(a)(8) ("Allowed Tax Claims") will receive equal deferred cash payments, payable quarterly, commencing with an initial payment six months from the Effective Date, over a period not exceeding five (5) years after the date of assessment of each such claim, or the applicable Petition Date, whichever is sooner; provided however, that Allowed Tax Claims shall be paid in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. The unpaid portion of any Allowed Tax Claim shall bear interest at the statutory rate. The Reorganized Debtor reserves the right to pay any Allowed Tax Claim in full at any time after the Effective Date.

**ARTICLE V**

**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS
THAT ARE IMPAIRED UNDER THE PLAN**

5.1     **Class 1 (Secured Claim of Central Pacific Bank)**.   The holder of the Allowed Class 1 Secured Claim shall retain its lien under non-bankruptcy law.   On the Effective Date, or the date on which the Class 1 Claim becomes Allowed, whichever is later, the Class 1 Claimant shall receive shall receive the following  (1) a cash payment in the amount of all net rents sequestered by the Debtor from and after June 1, 2010 up through the Effective Date,  and (2)  a Modified Promissory Note for the remaining balance of its Allowed Claim, including  outstanding principal, lawful interest, late charges, collection costs, and reasonable attorneys fees due as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the fixed rate of four and ninety-five one hundredths percent (4.95%) per annum. The Modified Note shall be payable in monthly installments of interest only. All outstanding principal and interest payable on this Modified Promissory Note shall be due in full seven (7) years from the Effective Date, unless paid in full prior to that time.     In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 1 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral. In the event that the Class 1 Claims is not Allowed as of the Effective Date, the Debtor shall deposit the periodic payments required by this Section into the Distribution Account, and such funds shall not be disbursed until entry of a Final Order allowing or disallowing the Class 1 Claim. Nothing herein shall be deemed to exonerate any guaranty held by the Class 1

9

Creditor.

5.2 **Class 2 (Secured Claim of Todd JBRE, LLC)**.

    5.2.1 **In General** The holder of the Allowed Class 2 Secured Claim shall retain its lien under non-bankruptcy law. The Class 2 Secured Claim shall be deemed allowed in the amount of $932,560.66 as of July 20, 2010, (which includes all outstanding principal, interest, late charges, collection costs, and reasonable attorneys fees due the Class 2 Claimant, other than $12,217.25 in attorneys fees and collections costs due from the Debtor's guarantors as of July 20, 2010) plus per diem interest in the amount of $297.02 through the Effective Date. On the Effective Date, the Class 2 Claimant shall receive the following: (1) a cash payment sufficient to pay down the outstanding balance as of the Effective Date to the sum of $750,000.00, (2) an extension fee in the amount of $15,000.00 and (3) a Modified Promissory Note for the sum of $750,000.00, payable on the terms set forth below.

    5.2.2 **Initial Terms of Modified Promissory Note.** This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the rate of twelve percent (12%) per annum. Without limiting the rights of the Class 2 Claimant under Section 5.24, the Modified Promissory Note shall provide for a late charge of 10% of any installment not paid within five days of the due date, the Note to bear default rate interest of seventeen percent (17%) per annum on occurrence of any default, and the Note shall authorize, but not obligate, the Class 2 Claimant to advance funds it deems reasonably necessary to protect its collateral and to charge the Reorganized Debtor a fee of four percent (4%) of any such advance made, all on the terms and conditions set forth in the Class 2 Claimant's prepetition "Promissory Note Secured By Deed of Trust". The Modified Note shall be payable in monthly installments of interest only. All outstanding principal and interest payable on this Modified Promissory Note shall be due three (3) years from the Effective Date ("the Class 2 Maturity Date"). This Modified Promissory Note may be prepaid at any time.

    5.2.3 **Extensions of Modified Promissory Note.** Provided that the Debtor is current on its obligations to the Class 2 Claimant and any senior lienholders, the Reorganized Debtor may obtain up to a three (3) year extension of the Class 2 Maturity Date by giving written notice and

tendering an extension fee equal to 200 basis points of the outstanding balance of the Class 2 claim on or before 90 days from the Class 2 Maturity Date. Notwithstanding the foregoing, the extended Class 2 Maturity Date shall be at least one year before the maturity date of the Class 1 Secured Claim, and nothing herein shall grant the Reorganized Debtor the right to obtain an extended Class 2 Maturity Date beyond such time.

   5.2.4 **Rights on Default.** In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 2 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral.

   5.2.5 **Subordination to New Senior Debt**. At any time prior to the extended Class 2 Maturity Date, the Class 2 Claimant agrees to subordinate its existing lien to a new first deed of trust on the subject property on the written request of the Reorganized Debtor on the following conditions: (1) the Reorganized Debtor shall not be in default on its obligations to the Class 2 Claimant or any senior lienholder (including real property taxes); (2) any such new first deed of trust shall completely satisfy the Class 1 Claimant; (3) no loan proceeds in excess of the amount necessary to satisfy the Class 1 Claimant shall be payable to any party other than the Class 2 Claimant, (4) the Class 2 Claimant shall have the right to review and approve the terms and documentation of any such new first deed of trust, which approval shall not be unreasonably withheld; (5) the Class 2 Claimant shall receive a payment in an amount sufficient to reduce the outstanding principal balance by twenty-five percent (25%); (6) the Manager/Broker of the Class 2 Claimant shall be paid be an accommodation fee of two percent 2% of the remaining unpaid principal balance as compensation for review of the loan documentation and associated escrow and title materials; and (7) the terms of any such new first deed of trust shall be as good or better than those currently due the Class 1 Claimant.

   5.2.6 **Rights Against Guarantors**. Nothing herein shall be deemed to exonerate any claim on a guaranty held by the Class 2 Creditor.

  5.3 **Class 3 (Secured Claim of Mark and Irma McClure, Trustees)**. The holder of the Allowed Class 3 Secured Claim shall retain their lien under non-bankruptcy law. On the Effective

11

Date, or the date on which the Class 3 Claim becomes Allowed, whichever is later, the Class 3 Claimant shall receive on the Effective Date a Modified Promissory Note for its entire Claim for all outstanding principal, interest, late charges, collection costs, and attorneys fees due as of the Effective Date. This Modified Promissory Note shall be deemed secured by the existing lien and shall bear interest at the rate of five percent (5%) per annum. The Modified Note shall be payable in monthly installments of interest only. All outstanding principal and interest payable on this Modified Promissory Note shall be due in full seven (7) years from the Effective Date, unless paid in full prior to that time. In the event that there is a default in payment of this Modified Promissory Note, which default is not cured within ten (10) days written notice to the Debtor, the Class 3 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral. In the event that the Class 3 Claims is not Allowed as of the Effective Date, the Debtor shall deposit the periodic payments required by this Section into the Distribution Account, and such funds shall not be disbursed until entry of a Final Order allowing or disallowing the Class 3 Claim.

5.4     **Class 4 (Secured Claim of The County of Sonoma).** The holder of the Allowed Class 4 Secured Claim shall retain its lien under non-bankruptcy law until all taxes have been paid in full and will receive deferred cash payments, payable semi-annually, commencing with an initial payment on or before July 1, 2010, over a period not exceeding five (5) years after the Petition Date, the unpaid portion of any such claim to bear interest at the statutory rate as set forth in Bankruptcy Code Section 511. The Reorganized Debtor reserves the right to pay the Class 4 Claim in full at any time after the Effective Date. A failure by the Reorganized Debtor to make a payment to the Class 4 Claimant shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Class 4 Claimant, then the Class 4 Claimant may enforce the entire amount of its Claim, plus all penalties and interest accrued under state law, against the Reorganized Debtor in accordance with applicable state law remedies.

5.5     **Class 7 (General Unsecured Claims).** Class 7 Allowed general unsecured claims shall be paid 100% of the amount of such claims, with interest at the Legal Rate from the Petition Date. Allowed Class 7 Claims shall receive an immediate dividend of 50% of their Claims on the

Effective Date, with the balance paid in four equal quarterly installments commencing one year from the Effective Date.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 **Post Confirmation Operations and Management of Reorganized Debtor**. On and after the Effective Date, the Reorganized Debtor shall be free to operate its business without further supervision or control by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code except as provided in the Plan or by an order of the Bankruptcy Court. Specifically and without limitation, the Reorganized Debtor may sell, lease, or refinance its properties without further Order of Court. The Reorganized Debtor shall continue to be managed by Rizzo & Associates, LLC.

6.2 **Treatment of Pre-confirmation Sequestered Rents.** The Reorganized Debtor shall continue to reserve all rents, issues, and profits collected from the subject property up through the Confirmation Date in a segregated account. From and after the Effective Date of the Plan, the Reorganized Debtor shall have the right to expend these funds for the following purposes: (1) construction of tenant improvements for new or renewing tenants for the subject property, (2) payment of leasing commissions for new tenants for the subject property, (3) payment of real property taxes, insurance, maintenance, and utility expenses necessary to preserve the subject property, (4) payment of U.S. Trustee's fees and (5) paydown of the Class 1 Claim. On each one year anniversary of the Effective Date until the full satisfaction of the Class 1 and Class 2 Creditors, the Reorganized Debtor shall provide annual statements to the Class 1 and 2 Creditors as to the disposition of funds in this segregated account. Any breach of this provision by the Reorganized Debtor shall be treated as a default as set forth in Article IX of the Plan below.

6.3 **Retained Power to Sell Free and Clear of Liens.** The Reorganized Debtor reserves its pre-confirmation rights and powers to sell its property free and clear of liens and interests by noticed motion pursuant to Bankruptcy Code § 363(f), as to any lien or interest whether scheduled or unscheduled, and whether perfected or unperfected. The Class 1, 2, and 3 Creditors reserve any

Case: 10-10088   Doc# 89   Filed: 08/17/10   Entered: 08/17/10 10:39:41   Page 14 of 24

and all grounds to object to such relief. The Court expressly reserves jurisdiction over those matters.

6.4 **Capital Contribution by Debtor's Members.** On or before the Effective Date, the Debtor's members shall make a capital contribution to the Debtor of the sum of $200,000 pursuant to the terms of the Debtor's operating agreement, or on such terms as they may agree among themselves. Said funds shall be used exclusively for the payment to the Class 2 Creditor set forth in Section 5.2 above.

6.5 **Distributions.**

6.5.1 **Distribution Account.** The Disbursing Agent shall hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

6.5.2 **Timing of Distributions.** The Disbursing Agent shall make Distributions to holders of Allowed Claims as required by Articles III, IV, and V of the Plan. Except as specifically set forth in the Plan or the Confirmation Order, Distributions may be made without further Order of Court.

6.5.3 **Reserve for Disputed Claims.** The Disbursing Agent shall retain a reserve in the Distribution Account in an amount sufficient to make a Pro Rata Distribution to Disputed Claims, and shall promptly make such Distribution when any Disputed Claim becomes an Allowed Claim.

6.5.4 **Distribution Addresses.** Unless a Creditor has provided the Reorganized Debtor with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules.

6.5.5 **Withholding Taxes.** Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent shall comply with all reporting obligations imposed on it by any governmental

14

unit with respect to withholding and related taxes.

6.6 **De Minimis Distributions.** Notwithstanding any other provision of the Plan, Distributions of less than $10.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $10.00, at which time the cumulative amount of such Distributions will be paid to such holder.

6.7 **Unclaimed Distributions.** Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Reorganized Debtor and be considered Available Cash.

6.8 **Prosecution of Retained Claims.** The Reorganized Debtor shall retain the right to collect and prosecute all of the Retained Claims.

6.9 **Revesting of Property of the Estate.** Subject to the provisions of Article IX of the Plan, on the Effective Date, all property of the Debtor and the Bankruptcy Estate shall vest in the Reorganize Debtor, free and clear of any and all liens (except for Allowed Secured Claims), encumbrances, Claims and Interests of Creditors and Equity Security Holders. Revesting does not modify the nature of any contracts assumed by the Debtor.

6.10 **Tax Returns and Payments.** The Reorganized Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Debtor on a timely basis (other than Tax Claims provided for under the Plan)

6.11 **Organizational Matters.** The Articles of Organization of the Debtor shall be deemed amended, as of the Effective Date, to prohibit the issuance of nonvoting equity securities and the issuance of any new class of voting equity securities until such time as all classified and unclassified creditors are paid in full.

6.12 **Further Orders.** Upon motion by the Debtor, on not less than ten (10) days' notice to the Notice Parties, the Bankruptcy Court may enter such other and further orders as may be

necessary or appropriate to facilitate consummation of the Plan.

6.13 **Insurance Policies.** To the extent any insurance policies exist in which either the Debtor and/or its personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor and/or the Debtor's current or former management or other personnel that may be covered by such policies.

6.14 **Post-Confirmation Operating Expenses.** From and the Effective Date, the Reorganized Debtor may incur and pay operating expenses in the ordinary course of business, including the compensation and reimbursement of the Debtor's Professionals for post-confirmation services. Compensation and reimbursement of the Debtor's Professionals for pre-confirmation services shall remain subject to authorization by the Bankruptcy Court, after notice and hearing, pursuant to Bankruptcy Code Section 330.

6.15 **Post-confirmation Notice.**

6.15.1 **Notice Generally.** To the extent any action taken in the Bankruptcy Case after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, the Order Limiting Notice entered in the Bankruptcy Case shall continue in effect and notice shall be required to the Notice Parties, provided that notice shall not be required to any Person whose Claims have been paid in full

6.15.2 **Notice Procedure.** Whenever the Plan requires the Reorganized Debtor to comply with the Notice Procedure (in such circumstance, the "Notifying Party"), the Notifying Party shall transmit a written notice to the Notice Parties (each, a "Notice Recipient") of the proposed action. The Notifying Party shall be authorized to take any action proposed to be taken in such notice fifteen days after delivery of such notice unless before the expiration of such 15-day period a Notice Recipient has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection with thirty days after filing of such objection and upon not less than 20 days notice to all Notice Parties. If any such objection is filed, the Notifying Party will not take the proposed action unless the Court approves such action or the objecting party withdraws the objection.

16

6.16    **Post-Confirmation Reports, Fees, and Final Decree.**

   6.16.1    **U.S. Trustee Fees.**  Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

   6.16.2    **Post-Confirmation Reports.**  Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee separate quarterly Post-Confirmation Operating Reports in substantially the form provided by the United States Trustee.  Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

   6.16.3    **Final Decree.**  After the Plan is substantially consummated, the Reorganized Debtor will file an application for a Final Decree, and will serve the application as provided in the Local Rules.

**ARTICLE VII**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1    **Assumption of Executory Contracts and Unexpired Leases.**  Any executory contracts of the Debtor, which have not specifically been rejected,  shall be deemed assumed as of the Effective Date.

7.2    **Effect of Assumption of Executory Contracts and Unexpired Leases.**  Any executory contracts assumed prior to Confirmation shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

7.3    **Adding and Removing Executory Contracts and Unexpired Leases.**  The provisions of this Article VII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

17

7.4 **Defaults.** Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtor shall, on or before the Effective Date, (a) cure, or provide adequate assurance that it will promptly cure, any such default, (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default, and (c) provide adequate assurance of future performance under such contract or lease.

7.5 **Rejection Claims.** Rejection Claims shall be classified as Class 7 Claims. The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE VIII

## PROOFS OF CLAIM AND INTEREST; OBJECTIONS

8.1 **Time for Filing Proofs of Claim.** Proofs of Claim, when required, shall be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed.

8.2 **Evidence of Claim.** For purposes of any Distribution under the Plan, the Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the first Distribution Date. The Reorganized Debtor, the Disbursing Agent, and their professionals shall be entitled to recognize and deal for all purposes with only those Creditors and Equity Security Holders of record with the Bankruptcy Court as of the first Distribution Date.

8.3 **Amendments to Claims.** Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim and proofs of interest may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

8.4 **Claim Objections.** An objection to a Claim shall be filed no later than the Claims Objection Date. The Reorganized Debtor shall have the responsibility to review Claims filed against

18

the Debtor, to file objections as appropriate, and to resolve Disputed Claims.

8.5 **Distributions.** Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the Section 6.5.

### ARTICLE IX

### DEFAULT

If the Reorganized Debtor shall default in the performance of any of their respective obligations under the Plan, and shall not have cured such default within a period of ten (10) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Reorganized Debtor to perform such obligations. If the Reorganized Debtor default in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the Plan shall terminate, and all property of the Reorganized Debtor shall revest in the Chapter 7 estate. Such property shall be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Reorganized Debtor, may oppose any such motion.

### ARTICLE X

### PRESERVATION OF RETAINED CLAIMS

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date. Without

limiting the generality of the foregoing, the Retained Claims include any and all claims held by the Reorganized Debtor against Central Pacific Bank. The Debtors has been investigating potential Retained Claims, including those against the aforementioned party. The Debtor furthers reserve the right to object to any filed or scheduled Claim. The entry of the Order of Confirmation shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Reorganized Debtor upon any Retained Claims.

## ARTICLE XI

### RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case (a) to enforce the provisions, purposes, and intent of the Plan, including matters or proceedings that relate to the Purchase Transaction; (b) to determine the allowance or disallowance of Claims and Interests, (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, Claims, causes of action or claims for relief held by the Reorganized Debtor against any party, including the recovery of property and subordination of Claims and Interests, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case, (h) to facilitate the consummation of the Plan, (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, and (j) to hear and determine any Claim of any Persons of any nature whatsoever against the Debtor's professionals arising in or related to the Case, and (k) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article.

## ARTICLE XII

### EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in

Section 1141 of the Bankruptcy Code, and as follows:

12.1  **Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Equity Security Holder, whether or not such Creditor or Equity Security Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Equity Security Holder is impaired under the Plan, and whether or not such Creditor or Equity Security Holder has accepted or rejected the Plan.

12.2  **Grant of Discharge.**  Except as otherwise provided in this Plan, in the Confirmation Order, or in 11 U.S.C. § 1141(d)(3), Confirmation shall be a discharge, effective as of the Effective Date and pursuant to 11 U.S.C. § 1141(d)(1), of any and all debts of the Debtor that arose at any time before Confirmation.  The discharge shall be effective as to each Claim regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept this Plan.  The Confirmation Order shall be deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

12.3  **Effect of Discharge.**  The discharge release provided for under this Plan shall have the effects set forth in the Bankruptcy Code including, but not limited to:

(a)  voiding any judgment obtained against the Debtor on any discharged debt; and;

(b)  operating as an injunction against the commencement or continuation of any action to collect, recover, or offset either any discharged debt from the Debtor, the Reorganized Debtor,  or its Estate or any property of the Debtor, the Reorganized Debtor,  or its Estate,  except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

12.4  **Full Satisfaction of Claims.**  Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Debtor, the Estate, or any assets or property of the Debtor, the Reorganized Debtor and the Estate.  Except with respect to Administrative Claims, Rejection Claims, and Claims described in Bankruptcy Rule 3002(c)(3), the Confirmation Order shall be

Case: 10-10088   Doc# 89   Filed: 08/17/10   Entered: 08/17/10 10:39:41   Page 22 of 24

deemed to be a Final Order disallowing any claim not filed as of the Effective Date.

12.5    **Reservation of Powers.**  Nothing in the Plan shall be deemed to have constituted a waiver of the any powers held by the Debtor as Debtor-in-possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules.  The Reorganized Debtor shall retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor-in-possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

## ARTICLE XIII

## MISCELLANEOUS

13.1    **Plan Interpretation.**  The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.   All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan.  All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan.  Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

13.2    **Modification.**  The Debtor may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

13.3    **Waiver.**  After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

13.4    **Reservation of Rights.**  Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b)

until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case involving the Debtor, except with respect to Confirmation of the Plan.

        DATED this 16th day of August, 2010.

| MacCONAGHY & BARNIER, PLC | INDUSTRY WEST COMMERCE CENTER, LLC<br>a California limited liability company |
|---|---|
| By: */s/ Original signed by*<br>John H. MacConaghy<br>Attorneys for Debtor | By: */s/ Original signed by*<br>Vincent Rizzo<br>Its Responsible Person |